UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

**F I L E D**
May 31, 2022
ARTHUR JOHNSTON, CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**CRIMINAL CASE NO. S90-00053(P)**

**RICHARD JOSEPH LYNN**                                        **DEFENDANT**

## MEMORANDUM OPINION DENYING MOTION TO TERMINATE SUPERVISED RELEASE

Richard "Dickie" Lynn is one of this country's most infamous cocaine smugglers. He was first convicted of distributing cocaine in Florida in the early 1980s. Almost immediately upon his release from federal prison, he was back at it. Lynn quickly climbed the ranks to lead an international drug smuggling ring that imported tons and tons of cocaine from Central America during most of the 1980s. His criminal organization involved pilots, personnel who refueled planes in Belize, personnel who unloaded cocaine in the United States, radio operators who monitored law enforcement communications, persons who distributed the cocaine, and numerous other individuals with various roles. Eventually he was caught and convicted again, this time in Alabama federal court.

After being sentenced to seven life sentences without the possibility of parole, he escaped. Instead of attempting to live a quiet life as an escaped convict, Lynn went right back to smuggling cocaine. This time he set up his headquarters in Mississippi. Lynn continued to have copious amounts of cocaine flown in from Central America. He strategically used airports in a few small Mississippi towns because these towns had limited law enforcement, and the airports could be observed by a lookout from nearby woods. Federal agents caught wind of this operation. Lynn noticed the agents conducting surveillance of him inside a restaurant, a skirmish ensued, shots

were fired, and Lynn was taken into custody. Lynn was convicted of importing cocaine—for the third time. And Lynn expressed no remorse for any of his actions. In 1991, he was sentenced in Mississippi to ten years imprisonment, to run concurrent to his prior life sentences. He was also sentenced to ten years of supervised release.

In 2020, Lynn's motion for compassionate release was granted in Alabama, and his seven life sentences were reduced to time served. The supervised release aspect of his Alabama sentence was terminated as well. Lynn claims the supervised release portion of his Mississippi sentence is still applicable. Lynn now moves to terminate this ten-year term of supervised release so, among other reasons, he can travel outside the country without seeking permission. For the reasons stated below, Lynn's motion is denied.

## I. BACKGROUND

Lynn's criminal career began early. He was first convicted of conspiracy to distribute cocaine in 1982. [Pretrial Sentencing Report, June 6, 1991][1], ¶ 26. He was released from federal prison in June of 1984, and as soon as "the fall of 1984" he went right back to drug dealing. *Id.* at ¶¶ 26, 27. This time, Lynn became the leader of an international drug-trafficking enterprise for the rest of the 1980s. As the crime boss, he ensured his criminal venture "smuggled massive amounts of cocaine, at least 600 kilograms per [airplane] load" into rural Alabama—before distribution to the rest of the United States. *Lynn v. United States*, 365 F.3d 1225, 1227 (11th Cir. 2004). Lynn had oversight over the operation including "pilots, personnel who refueled [] planes in Belize, personnel who unloaded cocaine in [the United States], radio operators who monitored law enforcement communications and persons who distributed the cocaine." *Lynn*, 365 F.3d at 1227.

---

[1] Given the age of the case, rather than referencing docket numbers, the Court will refer to the documents named and the dates in which the documents are filed.

Lynn had at least 23 individuals working for him within the crime organization. [Pretrial Sentencing Report, June 6, 1991], ¶ 27. After his arrest in 1989, approximately $3,000,000 in assets were seized from him. *Id.* at ¶ 55. However, Lynn often reported little to no income to the IRS during the 1980s. *Id.* at ¶ 56. Lynn was convicted of seven different felony drug crimes for his role in leading the crime syndicate.[2] In December of 1989, Lynn was sentenced in Alabama federal court to seven concurrent life sentences without the possibility for parole. *Id.* at ¶ 27.[3]

Three months after sentencing, Lynn escaped from federal prison. *See* [Pretrial Sentencing Report, June 6, 1991], ¶ 30. Lynn restarted his criminal behavior, and he chose Mississippi as the new center of operations. Again, he helped smuggle over 600 kilograms of cocaine per plane load from Central America to Mississippi. *Id.* at ¶ 12. He utilized airports in three small communities where the police were fewer in number and a lookout could be "hidden in the woods" to scan for law enforcement or trouble. *Id.* at ¶¶ 11, 12.

Federal agents learned of this smuggling operation in Mississippi. *Id.* These agents began conducting surveillance of Lynn—not realizing at first that he was the same drug kingpin who had recently escaped from federal prison. *Id.* In August of 1990, Lynn went to Chappy's Restaurant in Long Beach, Mississippi. *Id.* at ¶ 14. Lynn spotted the federal agents, a "skirmish" ensued, shots were fired, and Lynn was apprehended. *Id.* Lynn expressed no remorse for his actions. *Id.* at ¶¶ 16,

---

[2] These included the following: conspiracy to import cocaine, in violation of 21 U.S.C. § 963; conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; three counts of importation of cocaine, in violation of 21 U.S.C. § 952; and two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

[2] "Lynn's base offense level was 36 for importing 13,200 kilograms of cocaine." *Lynn v. U.S.*, 365 F.3d 1225, 1227 n.3. (11th Cir. 2004). Lynn's offense level was increased by a total of eight additional levels for possession of a firearm during the commission of the offense, obstruction of justice, and for his role as "a leader in the drug importation ring." *Id.*

23. Lynn pled guilty in Mississippi federal court to conspiracy to import a controlled substance. *Id.* at ¶¶ 1, 2. He was sentenced to ten years imprisonment, to run concurrent to his seven life sentences from his previous conviction. [Motion for Early Termination of Supervised Release, Sep. 2, 2021], pg. 6.

In 2020, Lynn moved for compassionate release in Alabama federal court and argued that his health was "experiencing [such] a serious deterioration" that it was necessary for him to be released. *United States v. Lynn*, No. 89-cr-0072-WS, 2020 WL 3229302 at *2 (S.D. Ala. Jun. 15, 2020) (slip copy). Lynn set forth numerous health conditions that had rendered him enfeeble. He also articulated how certain "potentially life-threatening conditions" justified his release from prison, such as his possibly fatal "congenital heart disease" and his chronic kidney failure that involved "the progressive destruction of kidney function and total renal failure." [Motion for Modification of Term of Imprisonment (Request for Compassionate Release), May 4, 2020, ECF No. 82], pp. 3–4. The Southern District of Alabama granted the motion and reduced Lynn's seven life sentences to time served. *Lynn*, 2020 WL 3229302 at *5. Lynn's supervised release was terminated as well in Alabama.

Lynn now resides in the Florida Keys. In the one-year time period after his release from prison, he was "extremely busy." [Motion for Early Termination of Supervised Release, Sep. 2, 2021], Ex. B, PageID #: 1121. During that short timeframe, he fell in love, helped a friend set up a new restaurant, worked in landscaping, repaired boats, and was in the process of obtaining a "Captain's License." *Id.* at ¶ 6; *see also Id.* at Ex. B, PageID #: 1121. He plans to run the "everyday business" of the restaurant and also hopes to work as a fishing guide in the Florida Keys. *Id.* at ¶ 6; Ex. B, PageID #: 1121.

Lynn maintains that the ten-year term of supervised release applicable to his Mississippi sentence remains in full effect. Lynn served approximately one year and two months of his ten-year term of supervised release when he filed the present motion for early termination of supervised release. [Motion for Early Termination of Supervised Release, Sep. 2, 2021]. Lynn requests this Court to terminate his remaining period of supervised release due to [his] "outstanding performance" *Id.* at 3. He desires to travel extensively without seeking permission from the Court or his probation officer. In October 2021, he was granted permission to leave the country to go to the Bahamas with his new girlfriend. He also wants to travel to France, Greece, and the Rocky Mountains without having to seek permission. *Id.* at Ex. B, PageID #: 1121.

## II. DISCUSSION AND ANALYSIS

A defendant may file a motion for early termination of supervised release pursuant to 18 U.S.C § 3583(3)(1). *See United States v. Tacker*, No. 1:09-cr-40-GHD, 2016 WL 1078267, at *1 (N.D. Miss. Mar. 17, 2016) (citing *Pepper v. United States*, 476 U.S. 502, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011)). A court may "terminate a term of supervised release at any time after the defendant has served one year of supervised release . . . [and] discharge the defendant from supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" *United States v. Jeanes*, 150 F. 3d 483, 484 (5th Cir. 1998) (citing 18 U.S.C. § 3583(e)(1)). These factors are:

> 1. the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2. the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> 3. the need for the sentence imposed to protect the public from further crimes of the defendant;

5

4. the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

5. the kinds of sentence and the sentencing range for the category of offense and category of defendant and whether the terms of supervised release were violated;

6. the pertinent policy statements by the Sentencing Commission;

7. the need to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct; and

8. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

District courts enjoy considerable discretion in determining when the interests of justice warrant early termination, and "courts have consistently declined to grant such relief just because the defendant has complied with his conditions." *United States v. McClain*, No. 99-cr-93-LA, 2009 WL 854107, at *1 (E.D. Wis. Mar. 30, 2009); *see United States v. Hayes*, No. 2:01-cr-311-CJB, 2013 WL 5328874, at *1 (E.D. La. Sep. 20, 2013) (denying the defendant's motion for early termination of supervised release where he had "done very well" on supervised release including complying with all terms). "Compliance with the terms of supervision and with the law is not enough to warrant termination; such conduct is expected and required." *United States v. Jones*, 2013 WL 2417927, at *1 (S.D. Tex. Jun. 4, 2013); *accord United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected and without more, insufficient to justify early termination."); *United States v. Mitchell*, No. 1:13-cr-538-RMB, 2020 WL 64541, at *2 (D.N.J. Jan. 7, 2020) ("[M]ere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify

early termination.") (quoting *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003)); *United States v. Singleton*, No. 4:13-cr-248(1), 2020 WL 3271633, at *1 (E.D. Tex. Jun. 17, 2020)).

Lynn failed to put forth an argument for or against any Section 3553 factors so the Court will analyze accordingly. The first factor involves Lynn's history and characteristics and the nature and circumstances of the offense. This factor weighs heavily against Lynn. He has been convicted of smuggling cocaine on three separate occasions. In fact, instead of learning his lesson after his first conviction, Lynn became the leader of an elaborate international drug trafficking enterprise and was responsible for the importation of vast amounts of cocaine into the United States. Lynn was convicted again. This time of seven different felony drug crimes. But being imprisoned did not stop Lynn from his visions of returning as a drug kingpin.

He escaped from prison in Alabama and immediately went back to importing cocaine via plane into the United States. [Pretrial Sentencing Report, June 6, 1991], ¶ 14. When federal agents located Lynn in Mississippi, shots were fired, and people's lives were put in danger due to his actions. He was convicted again.

Despite being a three-time convicted felon, notoriously leading an international crime syndicate, and escaping from federal prison, he expressed no remorse for his actions. Even now, he does not appear contrite. Instead, Lynn claims that he is a nonviolent offender and implies that he is the victim. But he is not the victim. And it should be noted that Lynn's sentence in Alabama included the two-level enhancement for possession of a firearm during the commission of the offense. *Lynn*, 365 F.3d at 1227 n.3. Lynn claims he has complied with the terms of supervision and had exemplary behavior, including a relationship with his family. [Motion for Early Termination of Supervised Release, Sep. 2, 2021], pp. 3-4. However, the serious nature of the crimes and Lynn's

history and characteristics significantly outweigh Lynn's actions after his latest release from prison.

With respect to the second factor, Lynn makes no real argument that his term of incarceration was adequate to deter him or anyone else from any future criminal conduct. Lynn had numerous opportunities earlier in his life to right his ship and live a law-abiding life. Lynn's status as an escaped convict did not even stop him from drug smuggling. Lynn is responsible for organizing the importation of lavish amounts of cocaine into the United States and has committed numerous federal felonies at every opportunity that he was given. And he utilized international travel and his international connections to create his boundless criminal operation.

Moreover, it does not appear from the record that Lynn was sentenced or served prison time for escaping from prison. Further, it appears other charges in other states may not have been pursued to completion either. Indeed, the record indicates that there was an assumption that Lynn would never be released from prison, so there was no point. This is evidenced by his Mississippi prison sentence running concurrent to his prior Alabama sentence of seven life sentences. Lynn still has a significant period of time on supervision, and the Court does not believe that terminating supervision at this point will serve to deter future criminal conduct. Ultimately, the second factor does not favor Lynn's request for early termination of supervised release. 18 U.S.C. § 3553(a)(2)(B).

As to the third factor, the need for the sentence imposed to protect the public from further crimes of the defendant, Lynn has not committed any criminal acts since his release in 2020. 18 U.S.C. § 3553(a)(2)(C). However, as previously discussed, Lynn engaged in constant serious criminal behavior when he was given chances before now. His past evinces a man who is capable

of extraordinary criminal behavior. And his health does not appear to stand in his way of reengaging again with criminal activity. Since he has been released from prison, he has taken part in numerous activities, has been "extremely busy," plans to work multiple jobs, and yearns for more international travel. His work ethic and adherence to his conditions of release are commended. The Court is certainly optimistic that Lynn no longer has a desire to return to the criminal underworld. But his own will, his support system, and supervised release are the only things standing in his way. This factor weighs against Lynn.

From a review of the record, it does not appear that the fourth, fifth, sixth, seventh, and eighth factors are particularly applicable to Lynn's request. 18 U.S.C. § 3553(a)(2)(D), (a)(5), (a)(6), and (a)(7). It is true that Lynn has not violated the terms of his supervised release. But Lynn has only served twenty-one (21) months of his ten (10) years of supervised release and has not served any prison time for the crimes committed in Mississippi since his prison sentence ran concurrent to his seven life sentences. [Motion for Early Termination of Supervised Release, Sep. 2, 2021], pp. 1-2.

Although the Government and Probation do not oppose early termination, this fact, standing alone, is insufficient to justify granting Lynn's request for early termination. *See e.g., United States v. Singleton*, No. 4:13-cr-248(1), 2020 WL 3271633, at *1 (E.D. Tex. Jun. 17, 2020) (denying early termination even though the government and the defendant's probation officer did not object to it); *United States v. Hartman*, No. 3:00-cr-227, 2013 WL 54257, at *1 (N.D. Tex. Jan. 18, 2013) (denying early termination even though the defendant's probation officer supported it).

The Court finds that Lynn's post-release conduct does not warrant early termination of his supervised release. Although Lynn provides the Court with a host of letters in support, he identifies

no new or exceptional circumstances to predicate the termination of his supervision. [Motion for Early Termination of Supervised Release, Sep. 2, 2021], pp. 11-18.

### III. CONCLUSION

For the reasons set forth in this opinion, the Defendant Richard J. Lynn's Motion to Terminate Supervised Release is DENIED.

This the 31st day of May, 2022.

                                                  TAYLOR B. McNEEL
                                            UNITED STATES DISTRICT JUDGE